UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN UEHLING,<br><br>         Plaintiff,<br><br>v.<br><br>MILLENNIUM LABORATORIES, INC.,<br><br>         Defendant. | Case No.: 3:16-cv-02812-L-MDD<br><br>**ORDER DENYING DEFENDANT'S MOTION [Doc. 119] FOR SUMMARY JUDGMENT** |

Pending before the Court is Defendant Millennium Laboratories, Inc.'s ("Millennium") motion for summary judgment. (MSJ [Doc. 119].) Pursuant to Civil Local Rule 7.1(d)(1), the Court decides the matter on the papers submitted and without oral argument. For the reasons stated below, the Court **DENIES** Millennium's motion.

//
//
//
//
//
//
//
//

1

## I. BACKGROUND

Millennium is in the business of providing drug testing products and services for medical providers concerned with pain management. One of Millennium's products is a urine Point of Collection cup ("POC cup") that comes lined with multiple test strips. When exposed to a urine sample, the test strips will indicate whether the sample tests positive for certain drugs. If a provider wants to confirm the onsite result produced by a POC cup, he or she can send the sample to Millennium for laboratory testing.

Millennium required that medical providers using its laboratory testing services fill out a Custom Profile form by checking boxes next to the names of certain drugs for which Millennium offers testing. When a provider would submit a urine sample to Millennium for laboratory testing and check a box labeled "Use Custom Profile", Millennium would test, and bill, for each drug checked in that provider's Custom Profile.

In 2011, Millennium directed its sales force to pressure providers to include at least twelve drugs on their Custom Profiles. Thus, inclusion of at least twelve drugs became a condition to providers opening an account with Millennium; continuing an existing account with Millennium; and receiving free POC cups. Because this strategy involved encouraging use of default custom profiles on all of a provider's patients, it does not appear that this sales push was concerned with providing for individual patients' specific medical needs. Rather, the purpose appears to have been a desire to increase profit margins, as Millennium earns more per sample by billing for more tests.

Millennium, as a Medicare Part B biller, harvested a substantial amount of revenue by billing the federal government for laboratory testing performed in accordance with Custom Profiles that did not account for individual patients' needs. It is illegal to bill Medicare for drug testing that is not necessary or specifically targeted to the needs of a patient. 42 U.S.C. § 1395y(a)(1)(a). Accordingly, Plaintiff Ryan Uehling ("Plaintiff"), Millennium's Western Regional Sales Director at the time, approached Millennium's President Howard Appel ("Appel") on two occasions with concerns regarding the legality of this practice.

Approximately one month after Plaintiff and Appel's second conversation, Millennium fired Plaintiff. Plaintiff then approached the government with evidence that Millennium was submitting false claims and, as a *qui tam* plaintiff, filed a complaint against Millennium with the United States District Court, District of Massachusetts, alleging violations of the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, through, *inter alia*, fraudulent billing and retaliation in the form of firing him for engaging in FCA protected activity. *U.S.A. ex rel Ryan Uehling, v. Millennium*, 1:12-cv-10631-NMG (D. Mass.) The government elected to intervene, and Millennium paid $256 million to settle the fraudulent billing claims against it. (Settlement Agreement [Doc. 125-8].) That settlement did not resolve Plaintiff's retaliation claim, which the Massachusetts court severed and transferred to this Court. (Severance [Doc. 1]; Transfer [Doc. 26].) Millennium now moves for summary judgment. (MSJ [Doc. 119].) Plaintiff opposes. (Opp'n [Doc. 125].)

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"[T]he district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (*citing Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S.

574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

The retaliation provision of the False Claims Act provides that

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). Thus, an FCA retaliation claim carries three elements (1) engagement in activity protected by the FCA; (2) employer knowledge of said activity; and (3) resulting discrimination, such as employment termination. *Cafasso, U.S. ex Rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1060 (9th Cir. 2011) (internal citations omitted). Millennium contends that it is entitled to summary judgment because Plaintiff's evidence cannot satisfy the first two elements. Plaintiff disagrees.

This dispute largely centers on whether Plaintiff has presented any admissible evidence sufficient to support a finding that he engaged in FCA protected activity. In 2009, Congress amended the FCA's retaliation provision in a manner that enlarged the universe of FCA protected activity. *U.S. ex rel. Chorches for Bankr. Estate of Fabula v.*

*American Med. Response, Inc.*, 865 F.3d 71, 97 (2d Cir. 2017). To wit, whereas the pre 2009 version of 31 U.S.C. § 3730(h) provided that only acts in furtherance of a FCA action triggered the retaliation provision, the 2009 amendment provides that it is also sufficient if a plaintiff simply engages in "other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1).

The parties have not cited, and the Court has not found, any binding authority defining exactly what qualifies as "other efforts to stop 1 or more violations of [the FCA]." Here, the Court need not determine what the lower threshold is that divides activity aimed at stopping FCA violations from activity that is not aimed at stopping FCA violation. Whatever that threshold may be, the Court finds that a reasonable jury could conclude that Plaintiff stepped across it by confronting the president of his company on two separate occasions with concerns that Millennium's practice of billing the government for unnecessary testing was not legal. Indeed, going directly to the president of a company to complain of fraudulent claims would, in theory at least, seem to be amongst the most effective actions an employee could take to bring an end to the practice.

The Court therefore finds that Plaintiff's testimony, if admissible, suffices to create a fact issue as to whether Plaintiff engaged in activity protected by the FCA. Plaintiff's testimony would also satisfy the second element of his claim. Indeed, if Plaintiff complained of fraud on the government directly to Defendant's president, it follows that Defendant would have been aware of Plaintiff's engagement in protected activity when it fired him. The dispositive issue therefore becomes whether Plaintiff's testimony is admissible.

Defendant contends that the sham affidavit rule precludes admission of Plaintiff's testimony. The sham affidavit rule provides that a party generally cannot create a fact issue by submitting an affidavit that contradicts that party's prior deposition testimony. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (internal citations omitted). However, the "sham affidavit rule should be applied with caution because it is in tension

with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Id.* The rule therefore applies only if the "inconsistency between a party's deposition testimony and subsequent affidavit [is] clear and unambiguous…" *Id.*

In 2013, Plaintiff participated as a third party witness in *Nelson v. Millennium*, 2:12-cv-01301-SLG (D. Ariz.) an FCA retaliation case brought by another employee against Millennium. During his deposition in *Nelson*, Plaintiff testified that he never used the specific words "illegal activities", "illegal", "fraudulent", or "unethical" in his conversations with Appel. (Uehling 2013 Dep. 141–43.) Millenium contends that this 2013 deposition testimony is inconsistent with Plaintiff's current testimony that he told Appel that adding medically unnecessary tests onto the custom profiles "doesn't seem legal" and asked Appel "is this legal?" (Uehling 2017 Dep. 240.)

The problem with Millenium's argument is that, technically speaking, there is no inconsistency between these two testimonies. To contradict his 2013 testimony, Plaintiff's current testimony would have to say that he did in fact use the specific words "illegal activities", "illegal", "fraudulent", or "unethical" in his conversations with Appel. Plaintiff's current testimony does not actually use any of these specific word(s). Rather, he claims to have used the words "not legal."[1] Because the two testimonies are not technically inconsistent, it would be improper for the Court to invade the fact finder's role of deciding whether to credit Plaintiff's current testimony as truthful. *Yeager,* 693 F.3d at 1080. Accordingly, the Court finds Plaintiff's testimony is admissible and sufficient to create a fact issue as to whether Millenium retaliated against Plaintiff for engaging in FCA protected activity.

---

[1] While it is true that there is no substantive difference between the word "illegal" and the words "not legal," the Court notes that Plaintiff has presented a plausible explanation as to why he used the latter formulation. In approaching Defendant's president with allegations of fraud on the government, Plaintiff was "scared to death" that the conversation could get him fired. (Uehling 2017 Dep. 243.) In an effort to tread lightly, Plaintiff used the words "not legal" because he believed them to be less threatening than the word "illegal." (Uehling 2017 Dep. 240–243.)

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Millenium's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: May 10, 2018

_____
Hon. M. James Lorenz
United States District Judge